# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

FORMOSTAR, LLC, *et al.*,  )
      Plaintiffs,  )  Case No. 2:11-cv-01166-GMN-CWH
vs.  )  **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
HENRY FLORENTIUS, *et al.*,  )
      Defendants.  )

This matter is before the Court on Plaintiffs Formostar, Sheer Legacy and Sun Italia's Motion to Remand to State Court (Dkt. No. 7), filed August 12, 2011, and Defendants Henry Florentius and SoliPax's Motion to Compel Arbitration and for a Stay Pending Arbitration (Dkt. Nos. 14, 15) filed September 13, 2011.

## BACKGROUND

The instant action was filed in the Eighth District Judicial Court in Clark County, Nevada on June 21, 2010. On July 15, 2011 Defendants SoliPax and Florentius removed the case to this Court pursuant to the Convention of the Recognition and Enforcement of Arbitral Awards (known as the "New York Convention"). *See* 9 U.S.C. § 201 *et seq*.

This action is based on a dispute arising from a Business Consulting Agreement ("Agreement") entered into between Plaintiff Sun Italia, LLC and Defendant SoliPax, Ltd. in January 2008. Plaintiffs Formostar LLC and Sheer Legacy, LLC are sister companies to Sun Italia who later performed under the contract. Defendant Henry Florentius is the president, CEO, manager, and sole owner of SoliPax.[1] SoliPax is a manufacturing business registered in Shanghai, the People's Republic of China.

---

[1] Plaintiffs allege that Florentius is the alter ego of SoliPax.

In January 2008 Plaintiffs Sun Italia, Formostar, and Sheer Legacy engaged the services of Florentius and Solipax to custom manufacture certain teeth whitening devices, infrared body warming devices, and leg tanning devices. *See* Complaint at ¶¶ 10-12 (Dkt. No. 1-1). Plaintiffs allege that the companies collectively paid Florentius more than $170,000, but never received a working proto-type of any of the devices requested.[1] *Id*. at ¶ 15. Plaintiffs ultimately directed a representative to oversee the manufacturing process at Solipax's facilities in China. *Id*. at ¶ 18. Plaintiffs allege that Florentius insisted he could deliver a set of devices that Plaintiff Formostar had commissioned, but needed several thousand dollars in order to complete the process. *Id*. at ¶ 19. Plaintiffs state that the money was wired to Defendants, but Florentius insisted that the transfer was made to the wrong account. *Id*. at ¶ 20. Plaintiffs again wired several thousand dollars to Defendants. *Id*. at ¶ 23. Plaintiffs allege that Florentius then absconded with the money and shut down Solipax. *Id*. Plaintiffs state that Florentius' assistant later represented to Plaintiffs that Chinese authorities had shut down Solipax and Plaintiffs could pay an additional $ 28,000 to reclaim the existing equipment. *Id*. at ¶ 25.

Instead, Plaintiffs initiated this case in state court, alleging fraud, conversion, breach of contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing in contract and tort, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, breach of express warranty, unjust enrichment, and alter ego.

Section 14 of the Agreement expressly provides the following:

14. Dispute.

In the event of any disputes, both parties agree to use their best efforts on good-faith basis to resolve any disputes amicably. If resolution cannot be satisfactorily achieved through this consultations both parties agree to voluntarily submit the dispute to the Shanghai Arbitration Commission and thereafter abide by the rules of the Arbitration Commission.

*See* Agreement (Dkt. No. 1-2), at ¶ 14.

---

[1] Defendants did occasionally deliver products to Plaintiffs, however, Plaintiffs allege that these devices were defective.

**DISCUSSION**

**A.  Plaintiffs' Motion to Remand to State Court**

Plaintiffs' Motion is premised on the argument that the New York Convention does not apply, thereby eliminating this Court's jurisdiction as well as the application of the arbitration provision in the parties' agreement.  The determination of whether the New York Convention governs the agreement is a threshold issue to the arbitration provision's enforceability.

"Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants . . . ." 28 U.S.C. §1441. District courts have original jurisdiction over an action falling under the Convention.  9 U.S.C. § 203.

Defendants removed this action pursuant to Title 9 U.S.C. § 205.  The New York Convention provides that federal courts have removal jurisdiction

> [w]here the subject matter of an action or proceeding pending in a State court *relates to* an arbitration agreement or award falling under the Convention . . . .  The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205 (emphasis added).

Generally, courts "strictly construe the removal statute against removal jurisdiction." *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).  However, "the plain language of § 205 provides federal courts with remarkably broad removal authority." *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1138 n. 5 (9th Cir. 2011) (citing *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002) ("[E]asy removal is exactly what Congress intended in § 205.")).

"[T]he removing party has the burden to show both that (1) an agreement exists that 'falls under' the New York Convention, and (2) the dispute 'relates to' the arbitration agreement." *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, No. C 08-4871, 2009 WL 440477, at *4 (N.D. Cal. Feb. 23 2009), *aff'd*, 631 F.3d 1133 (9th Cir. 2011).

**1. Whether the Arbitration Agreement "Falls Under" the New York Convention**

"In order for an agreement to fall under the Convention, it must arise out of the commercial relationship.  At least one of the parties to the agreement must not be a U.S. citizen, or, if the agreement

is entirely between U.S. citizens, it must have some 'reasonable relation' with a foreign state." *Beiser*, 284 F.3d at 666 n. 2 (citations omitted).

Plaintiffs argue that this agreement does not fall under the New York Convention, but rather the Inter-American Convention on International Commercial Arbitration (known as the "Panama Convention") governs this case. The Panama Convention was designed to be fully compatible with the New York Convention and "addressed the growing need for a measure of consistency and uniformity in the recognition and enforcement of arbitral awards in Latin America." *Energy Transport, Ltd. v. M.V. San Sebastian*, 348 F.Supp.2d 186, 198 (S.D.N.Y. 2004) (citing John P. Bowman, *The Panama Convention and its Implementation under the Federal Arbitration Act*, 11 Am. Rev. Int'l Arb. 1, 7-8, 20 (2000)). "The New York Convention and the Inter-American Convention [were] intended to achieve the same results, and their key provisions adopt the same standards . . . ." *Id*. (quoting H.R.Rep. No. 501, 101st Cong., 2d Sess. 4 (1990)). When a dispute is actionable under both Conventions, the New York Convention controls, unless a majority of the parties to the arbitration agreement are members of the Organization of American States (OAS) who have acceded to the Panama Convention.[3] 9 U.S.C. § 305.

Plaintiffs contend that here, the majority of the parties to the agreement are members of the OAS since three Plaintiffs are citizens of the United States, and two Defendants are citizens of China. In doing so, Plaintiffs rely on Defendants' argument that all Plaintiffs should be bound by the arbitration agreement. However, the actual parties to the agreement are Plaintiff Sun Italia and Defendant SoliPax, the signatories.[4] Thus, there can be no majority of parties that are citizens of a member State and the Panama Convention does not govern this action.[5]

---

[3] The United States is a member of the OAS, while the Republic of China is not. *Available at* http://www.oas.org/en/member_states/default.asp.

[4] This is not to say that Plaintiffs Formostar and Sheer Legacy are shielded from the parties' arbitration agreement. In the Court's subsequent determination of whether to compel arbitration, the Plaintiffs could be deemed nonparties who are nonetheless bound by the arbitration agreement.

[5] Regardless, the arbitration agreement in this case provides that the proceeding take place in China, a non-member country. While Section 302 expressly refers to the reciprocity of awards,


The Court finds that the agreement arose out of a commercial relationship between Plaintiff Sun Italia and Defendant SoliPax for the manufacturing of goods, and Defendant SoliPax is not a U.S. citizen. Thus, the agreement falls under the New York Convention.

**2. Whether the Subject Matter of the Litigation "Relates to " the Arbitration Agreement**

Plaintiffs argue that Defendants have not met the burden of showing that the agreement relates to this case since it involves state law claims and would only affect the signatories to the agreement, and not the other parties in this case.

> [W[henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit. Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of "relates to."

*Beiser*, 284 F.3d at 1138.

The agreement expressly provides for arbitration "in the event of *any* disputes" between the parties. *See* Agreement (Dkt. No. 1-2), at ¶ 14 (emphasis added). Even if the arbitration provision only relates to claims between Sun Italia and Solipax, as Plaintiffs argue, an arbitrator's decision will ultimately determine whether there was a breach of the agreement, and any other claims related to a breach. Plaintiffs Sheer Legacy and Formostar allege that Defendants failed to perform under the subject agreement, and the arbitrator will determine every parties' obligations under the contract and if those obligations were performed. Further, the two nonsignatories may still be bound to the arbitration

---

> . . . U.S. courts have, by analogy, applied the same limitation of reciprocity to arbitration agreements. Unless courts treat arbitration agreements and arbitral awards consistently, requiring the arbitral site to be in a Contracting State in accordance with the reciprocity reservation in both circumstances, the prospect exists that a court could order arbitration in a non-Contracting State but be unable to enforce the resulting award under the applicable Convention.

Bowman, 11 Am. Rev. Int'l Arb. at 76-77. Further, "the Inter-American Convention incorporates by reference the relevant sections of the New York Conventions, and thus an analysis of removal pursuant to the Inter-American Convention would mirror the Court's analysis here." *See Freaner v. Valle*, No. 11CV1819 JLS (MDD), 2011 WL 5596919, at 2 n. 1 (S.D. Cal. Nov. 17, 2011) (citing 9 U.S.C. § 302).

agreement.

The Court finds that it is more than conceivable that the arbitration will impact the disposition of the case.

### 3. Timeliness of Removal

Finally, Plaintiffs argue that Defendants failed to timely remove this action from state court.[6]

Section 205 provides, in pertinent part, that "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award under the Convention . . . the defendants may, at any time before the trial thereof, remove such action to the district court of the United States . . . . The procedure for removal of causes otherwise provided by law shall apply . . . ." 9 U.S.C. § 205.

Plaintiffs contend that the thirty-day removal requirement set forth in 28 U.S.C. § 1446(b) should be the law governing the "procedure for removal of causes." Defendants maintain that removal prior to trial was sufficient. The Ninth Circuit has determined that "[t]he meaning of this section [205] is clear: a defendant may remove a qualifying state court action to federal court at any time before the claims raised in the state court action have been adjudicated." *Infuturia*, 631 F.3d at 1139 (citations omitted). Further, this Circuit has noted that "[a] number of other courts . . . have held that the thirty-day rule is inapplicable to section 205 cases." *Arab American Television v. Union of Radio and Television of Arab*, 152 F.3d 923, 923 (9th Cir. 1998); *see also Dale Metals Corp. v. Kiwa Chem. Indus. Co., Ltd.*, 442 F.Supp. 78, 81 n.1 (S.D.N.Y. 1977) ("Given [the] explicit time rule contained in § 205, the notion that the time provision of 28 U.S.C. § 1446(b) applies is totally without merit.").

The Court, therefore, finds that since the removal in this case occurred prior to any adjudication of claims by the state court, the notice was timely filed.

---

[6] Plaintiffs additionally argue that even if removal is deemed timely, that Defendants waived their right to demand arbitration. Plaintiffs' argument is not an appropriate consideration in determining whether jurisdiction exists and will be addressed by this Court in relation to Defendants' Motion to Compel Arbitration. *See infra.*

**B. Defendants' Motion to Compel Arbitration and For a Stay of All Claims**

**1. Preliminary Inquiry**

The Ninth Circuit has held that, in determining whether to issue an order compelling arbitration under the New York Convention, the Court may not review the merits of the dispute but must limit its inquiry to determining whether: (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 SI, C 10-5458 SI, 2011 WL 5325589, at *2 (N.D. Cal. Sept. 19, 2011) (citing *Balen v. Holland America Line, Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009). There is no dispute that the agreement provides for arbitration in China, a signatory to the Convention, and that a party to the agreement, Solipax, is not an American citizen. Further, the agreement arises out of a legal relationship that is commercial in nature; specifically the payment for the manufacture of goods. The parties dispute whether there is "an agreement in writing" that satisfies the Convention.

The Convention requires an "an agreement in writing" to arbitrate disputes signed by the parties or contained in an exchange of letters or telegrams. New York Convention art. II §§ 1-2. The parties do not dispute that a written arbitration agreement exists between Plaintiff Sun Italia and Defendant Solipax. However, Plaintiffs argue that the Convention's requirement cannot be met since the remaining parties to this suit did not sign an agreement in writing to arbitrate.

Courts have previously held that an arbitration clause in a contract provides a written agreement that "satisfies the Convention, even when the party being forced to arbitrate has not signed the contract." *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 335 n.1 (5th Cir. 2010) (citing *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669-70 (5th Cir. 1994)). "[A]s long as there is some 'agreement in writing,' the Convention may require a nonsignatory to arbitrate." *Id.* (citations omitted).

Plaintiffs rely on *Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd.* for the proposition that nonsignatories can never be bound to an arbitration agreement. 186 F.3d 210 (2d Cir. 1999), abrogated in part on other grounds by *Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 660 n. 2 (2d Cir. 2005). In

7

*Kahn Lucas*, the Second Circuit determined that Plaintiff could not be compelled to arbitrate since the only agreement between the parties existed in the form of purchase orders that the defendant had not signed. *Id*. at 216. The Court found that these purchase orders did not represent a written agreement to arbitrate so as to fall under the purview of the Convention. *Id*. at 218-19. However, the Second Circuit did not decide the issue of whether a nonsignatory to an agreement in writing signed by two parties can be compelled to arbitrate under the Convention.

Here, an agreement containing an arbitral clause is signed by at least two parties. The Convention's requirement of an "agreement in writing" to arbitrate is met. The question presented to this Court is whether Sheer Legacy and Formostar, as nonsignatories, can be compelled to arbitrate based on the arbitral clause contained within the agreement signed by Sun Italia and Solipax.

Defendants argue that although Plaintiffs Formostar and Sheer Legacy were not signatories to the agreement, the companies performed under the contract and should be compelled to arbitrate.

"Nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986). These principles include "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).[7]

Defendants first seek to hold Formostar and Sheer Legacy bound under the principle of equitable estoppel, which "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Id.* (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004). "[N]onsignatories have been held to arbitration clauses where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" *Id*. (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3rd Cir. 2001)). In order to apply estoppel against the nonsignatories, there should be a showing that Sheer Legacy and Formostar

---

[7] Defendants further argue that Plaintiffs Sheer Legacy and Formostar are bound to the agreement due to the close relationship between the entities involved. However, this principle is applied in the context where signatories have been required to arbitrate claims brought by nonsignatories and is not applicable to the case at bar. *See Comer*, 436 F.3d at 1101 (citations omitted).

"obtained a 'direct benefit' from the underlying contract, that is, a benefit 'flowing directly from the agreement.'" *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F.Supp.2d 1045, 1055 (D. Or. 2004) (quoting *Mag Portfolio Consult, Gmbh v. Merlin Biomed Group, Llc*, 268 F.3d 58, 62 (2d Cir. 2001)).

Plaintiffs argue that Sheer Legacy and Formostar did not claim the benefits of the subject agreement, but instead relied and performed under separate oral contracts. The only evidence submitted in support of this are the statements of Paris Balaouras and Patryk Reczek, employees of the three Plaintiff companies, which are not notarized. Plaintiffs' complaint instead references a single contract entered into by all Plaintiffs. In fact, all three companies pled a breach of mutual non-disclosure agreement that is only found in the written contract.

Plaintiffs were able to directly oversee the manufacturing process of the devices procured by the agreement. *See* Complaint at ¶ 18 (Dkt. No. 1-1). Plaintiffs allege that the companies submitted payment to Defendants in order to receive the benefit of the manufactured goods as provided by the contract. Thus, Plaintiffs were attempting to take advantage of the agreement in order to obtain products. Defendants did provide Plaintiffs with products, and although Plaintiffs allege that the products were defective, the companies were able to construct a merchantable product from the Defendants' devices albeit after re-engineering and repair. *Id*. at ¶ 17.

Further, all Plaintiffs are attempting to take advantage of the terms of the agreement by alleging claims that specifically involve a breach of the contract and seeking damages under the contract. In fact, the "valid and existing contract" provides a part of the factual foundation for the majority of claims asserted by Plaintiffs, and is alluded to in the remaining claims. In support of these claims, Plaintiffs take advantage of the agreement by alleging that the three companies "fully performed their obligations as required under the contract," but Defendants failed to do so. *See* Complaint at ¶¶ 50-51 (Dkt. No. 1-1).

For these reasons, the Court finds that Sheer Legacy and Formostar should be bound to the entire agreement, including the arbitration provision, on the ground of equitable estoppel.

Alternatively, Defendants seek to compel Plaintiffs on the grounds that Sheer Legacy and

Formostar are third-party beneficiaries of the agreement. For a third party beneficiary to be bound to a contract, there must be evidence that the signatories to the agreement intended to benefit third parties. *Comer*, 436 F.3d at 1102. Sheer Legacy was not in existence at the time the contract was entered and thus, it is impossible that Sun Italia and Solipax anticipated Sheer Legacy as a specific beneficiary during execution of the agreement. Further, the agreement does not make reference to future companies. Nor does the agreement expressly mention Formostar. Since there is no evidence from the content of the agreement that Sun Italia and Solipax intended to benefit any other companies, Sheer Legacy and Formostar cannot be bound as third-party beneficiaries.

Defendants further argue that Sun Italia should be deemed the agent of Sheer Legacy and Formostar, and that the actions of Sun Italia were binding on its sister companies. Plaintiffs' complaint does allege that both Sheer Legacy and Formostar, as sister companies of Sun Italia, engaged the services of Florentius and Solipax. *See* Complaint at ¶¶ 11-12 (Dkt. No. 1-1). Further, all three companies seemingly acted in concert during the entire process. For example, Plaintiffs paid collectively for devices manufactured for Formostar, sent one representative to oversee the process for all devices, and shared employees. However, there is no direct evidence that Sun Italia intended to bind Sheer Legacy and Formostar to the contract. While Sun Italia could have been acting as the agent of any existing or future sister companies, there is simply inadequate evidence to establish agency at this juncture. Thus, Sheer Legacy and Formostar will be bound solely on the ground of equitable estoppel.

Defendants additionally claim that the Court may compel Defendant Florentius, a nonsignatory, to arbitrate since he is the alter ego of Solipax. "Nonsignatory . . . alleged alter egos are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed." *Prograph Intern, Inc. v. Barhydt*, 928 F.Supp. 983, 991 (N.D. Cal. 1996) (citing *Pritzker v. Merrill* Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1122 (3rd Cir. 1993)). "Under the alter ego analysis, a member of a limited liability company may be liable If (1) a sufficient 'unity of interest and ownership' exists such that the member and company are no longer separate, and (2) an inequitable result will follow if the company and member are treated separately." *Kirby Morgan Dive Sys. v. Hydrospace Ltd.*, No. CV 09-4934 PSG (FFmx), 2010 WL 234791, at *4 (C.D. Cal. Jan. 13, 2010)

(citations omitted).

Florentius was the president, manager, and sole owner of Solipax. He entered into the subject agreement on the company's behalf. Plaintiffs allege that Florentius was the primary contact for Solipax, handling orders and finances. In fact, Plaintiffs claim that Florentius personally absconded with the money paid to Solipax for manufacturing services. The Court finds that a sufficient unity of interest and ownership existed between Florentius and Solipax wherein Florentius was actually the alter ego of the company. Further, Solipax is no longer in existence. Therefore, if Plaintiffs were to prevail they would have no recourse whatsoever unless Florentius was held responsible for the company's liability. Based on these determinations, Florentius was the alter ego of Solipax during its existence and may compel arbitration under the clause he signed on behalf of the company.

Further, since Florentius, as sole owner, president and manger of Solipax, was the agent of the company that the arbitration provision intended to cover, he was standing to compel arbitration. *See Boston Telecomm. Group, Inc. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 539 (9th Cir. 2007).

Based on the foregoing, the Court finds that it is able to compel all parties in this matter to arbitrate the dispute.

**2. Whether the agreement is null and void, inoperative or incapable of being performed.**

Since the four preliminary questions have been resolved in the affirmative, the Court shall "refer the parties to arbitration, unless it finds that the agreement is null and void, inoperative or incapable of being performed." New York Convention art. II § 3.

Plaintiffs argue that the arbitration agreement should be deemed null and void because not all of the parties to this action are signatories. However, as discussed *supra*, nonsignatories may be compelled to arbitrate, and this fact would not render the agreement null and void.

Plaintiffs further claim that the arbitration agreement is incapable of being performed since Solipax is not operational and Sun Italia may soon cease to exist. While Solipax has been dissolved, Defendant Florentius is the alter ego, and at the least the agent of the company. The fact that it is "not unlikely" that Sun Italia will not exist in the unforeseen future is not sufficient evidence to show that the arbitration cannot be performed. *See* Plaintiff's Response at 2 (Dkt. No. 16).

Lastly, Plaintiffs contend that Defendants waived the right to demand arbitration by participating in state court litigation. "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (citing *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., Inc.*, 572 F.2d 1328, 1330 (9th Cir. 1978)).

There is no dispute that Defendants had knowledge of the right to compel arbitration. However, whether Defendants acted inconsistently with that right and whether Plaintiffs were prejudiced are at issue. Plaintiffs allege that Defendants participated in settlement negotiations, filed a motion to dismiss, and conducted a small amount of discovery.[8] Plaintiffs claim that they were prejudiced through the expense of pursuing default, engaging in discovery, and litigating issues and motions raised by Defendants.

Defendants maintain that they consistently asserted their right to arbitrate throughout the state court proceedings. In fact, Defendants' Motion to Dismiss filed in state court argued that Nevada state courts had no general or specific personal jurisdiction over Defendants and that the parties had expressly agreed to a forum for resolving their disputes in the form of arbitration. Defendants somewhat participated in discovery during the pendency of this motion.[9] After Defendants' motion was denied, they removed the case to this Court and requested an order compelling arbitration. The Court finds that Defendants' litigation in state court was not inconsistent with their right to compel arbitration.

Further, Plaintiffs violated the arbitration agreement by initiating this action in state court, and thus any prejudice suffered "as a result of pursuing litigation in state court prior to a demand for arbitration was self-inflicted." *Transp. Handlers Air Truck Serv. in U.S., Inc. v. Team Air*, No. 90-55463, 1991 WL 90027, at *2 (9th Cir. May 30, 1991) (citing *Fisher*, 791 F.2d at 698). Plaintiffs have

---

[8] The Court will not punish Defendants for engaging in settlement negotiations, as settlement conceivably could have avoided costs of litigation as well as arbitration.

[9] Defendants answered Plaintiffs' requests for admissions and interrogatories, but not produce any documents.

failed to establish that Defendants acted inconsistently with the right to demand arbitration. Plaintiffs have also failed to demonstrate any prejudice as a result of the alleged inconsistent acts.

## CONCLUSION

The Court finds that the agreement in dispute falls under the New York Convention and that the Plaintiffs' claims relate to the subject matter of the agreement. Further, Defendants timely removed the action to this Court. Therefore, Plaintiffs' Motion to Remand is without merit. The Court further determines that there is an agreement in writing that satisfies the Convention, the agreement provides for arbitration in the territory of a signatory of the Convention, the agreement arises out of a commercial legal relationship, and at least one party to the agreement is not an American citizen. Since the agreement is not null and void, inoperative or incapable of being performed, Defendants' Motion to Compel Arbitration should be granted.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion to Remand to State Court (Dkt. No. 7) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion to Compel Arbitration and for a Stay Pending Arbitration (Dkt. Nos. 14, 15) be **granted** and that this case be **stayed pending arbitration**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual

1 issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt*
2 *v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).
3   DATED this 5th day of March, 2012.

_____
C.W. HOFFMAN, JR.
United States Magistrate Judge